**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEROME ROBERTS, TIMOTHY WIMBUSH, and TAQUAN WILLIAMS | Crim. No. 19-134 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Before the Court are motions *in limine* filed by the Government and defendants Jerome Roberts, Timothy Wimbush, and Taquan Williams ("Defendants"). All three defendants were charged with conspiring to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); Roberts was separately charged with unlawful distribution and possession of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and defendants Wimbush and Williams were separately charged with possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On August 19, 2021, the Court held a hearing and ruled on all but two of the issues raised in the parties' motions. The first unresolved issue concerns the Government's request to introduce testimony related to Wimbush's alleged past possession of one of the firearms underlying his unlawful possession charge. The second unresolved issue concerns the Government's request to preclude the defendants from cross-examining a Government witness about a 2004 psychological evaluation and a 2016 incident, both of which allegedly bear on the witness's credibility.

For the reasons set forth herein, the Government's Motion with respect to the unresolved issues is **GRANTED** in part and **DENIED** in part. The Government's Motion with respect to the

1

witness testimony is denied, as that testimony is not admissible under Federal Rule of Evidence 404(b). The Government's Motion is granted with respect to cross-examination on the 2004 psychological evaluation. And, the Government's Motion is denied with respect to cross-examination on the 2016 incident, but Defendants may cross-examine the witness in this regard only to the extent authorized in this Opinion, as described *infra*.

I.  BACKGROUND AND PROCEDURAL HISTORY

Below I set forth the background in this case relevant only to the present motions.

On February 27, 2020, a Third Superseding Indictment charged Roberts, Wimbush, and Williams, among others, with, *inter alia*, conspiracy to distribute heroin and, in the case of Wimbush and Williams, unlawful possession of firearms. Third Superseding Indictment, ECF No. 452. Wimbush, Williams, and Roberts are proceeding to trial, and jury selection is scheduled to begin on September 9, 2021.

As relevant here, Wimbush and Williams were arrested on September 6, 2018, following a stop of the vehicle in which the two defendants were driving. The Government intends to introduce evidence that, while searching the vehicle, officers discovered firearms, including a .223 caliber semiautomatic assault rifle, in a trap compartment hidden inside the car. Amended Brief of the United States in Support of the Government's Motions in Limine, ECF No. 609 at 12–14. The unlawful possession charges against Wimbush and Williams in Counts Six and Eight pertain to these firearms.

During the August 19, 2021 hearing, I reserved judgment on two issues raised in the parties' motions. *See* August 19, 2021 Motions Hearing Transcript, ECF No. 621. The first issue concerns the Government's request to introduce the testimony of cooperating witness who, according to the Government, will represent that Wimbush showed him or her a picture of a semiautomatic rifle in January or February 2018 that matches the appearance of the .223 semiautomatic assault rifle discovered in Wimbush's vehicle on September 6, 2018, and that Wimbush made comments

reflecting his possession of that rifle (the "Photograph Testimony"). *Id.* at 56; ECF No. 609 at 13. The second issue on which I reserved judgment, ECF No. 621 at 69–70, concerns the extent to which the defendants may cross-examine a Government witness, Detective Eliezer Ramos, regarding two past incidences that potentially bear on his character for truthfulness: the first incident involves a psychological evaluation conducted in 2004, during which two psychologists concluded that Ramos had been untruthful, ECF No. 609 at 32–34; and the second incident involves allegations that Ramos planted evidence in a separate case in 2016, which is the subject of an ongoing civil lawsuit. ECF No. 612 at 14–15. I address each of these two issues in turn.

## II.  DISCUSSION

### A.  Photograph Testimony

During the hearing on August 19, 2019, I concluded that the Photograph Testimony is not admissible as intrinsic evidence of Wimbush's possession of the .223 caliber assault rifle discovered in his vehicle, ECF No. 621 at 48, but I reserved judgment as to whether the evidence is admissible under Federal Rule of Evidence 404(b). *Id.* at 48, 56. For the reasons which follow, I agree with Wimbush that the Photograph Testimony is not admissible under Rule 404(b), either.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving . . . knowledge." Fed R. Evid. 404(b)(2). "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). "There are four distinct steps that must be satisfied before prior bad act evidence may be introduced at trial: (1) it must be offered for a proper non-propensity purpose that is at issue in the case; (2) it must be relevant to that purpose; (3) its

3

probative value must not be outweighed by the danger of unfair prejudice under Rule 403; and (4) it must be accompanied by a limiting instruction, if one is requested." *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014); *Repak*, 852 F.3d at 241 (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

Under the first factor, the Government has offered the Photograph Testimony for a proper non-propensity purpose. The Photograph Testimony is offered not to show Wimbush's "general propensity to possess firearms," but rather "goes directly to his ownership, control, knowledge, and possession of that firearm on the date charged in the indictment." ECF No. 609 at 23–24. "Evidence of knowledge . . . is critical in constructive possession cases, as [a] defendant will often deny any knowledge of a thing found in an area that is placed under his control (e.g., a residence, an automobile)." *Brown*, 765 F.3d at 292; *cf. Caldwell*, 760 F.3d at 278–79 (holding knowledge is not "at issue" in actual possession cases). As in *Brown*, "[t]his case presents the paradigmatic constructive possession scenario" because Wimbush's only apparent defense is that he was not aware of the contents in the trap compartment. 765 F.3d at 292. Thus, "showing [Wimbush's] knowledge that the gun was in [his vehicle is] an appropriate non-propensity purpose for offering the evidence of [Wimbush's] previous [possession of the .223 caliber rifle]." *Id.*

Under the second factor, I must consider whether the Photograph Testimony is relevant to Wimbush's knowledge that the firearm was in his vehicle on September 6, 2018. In *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012), the Seventh Circuit held that testimony concerning a defendant's prior possession of a firearm was admissible under Rule 404(b) where the testimony "concerned the same gun" and "the prior observed possession was relatively recent." *Id.* at 695. There, the witness testified that she had seen the defendant take the same "dark, rusty gray" pistol out of his pants and place it on a table approximately two months before the defendant's arrest for unlawful possession. *Id.* at 694. Because the testimony related to the defendant's "*recent* possession

4

of the *same* gun," it "was admissible as circumstantial evidence of the charged crime, and its use for that purpose was not barred by Rule 404(b)." *Id.* at 695 (emphasis added); *see also United States v. Washington*, 962 F.3d 901, 904, 906–07 (7th Cir. 2020) (upholding admissibility, under *Miller*, of testimony concerning defendant's possession, as depicted in a YouTube video, of the same firearm three months prior to the charged firearm possession offense). The Third Circuit has endorsed the rule adopted in *Miller*. *See United States v. Caldwell*, 760 F.3d 267, 282–83 (3d Cir. 2014). Citing to *Miller*, *Caldwell* explained that "'[i]f the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably.'" *Id.* at 283 (quoting *Miller*, 673 F.3d at 695). "'Similarly, as the prior possession is further removed in time, it becomes less probative of possession on the date charged.'" *Id.* at 283 (quoting *Miller*, 673 F.3d at 695).

Here, the Government argues that the Photograph Testimony is relevant to Wimbush's knowledge and constructive possession of the .223 caliber firearm discovered in his vehicle because the testimony concerns the same gun and the witness's observation was relatively recent in comparison to the date of Wimbush's arrest. ECF No. 609 at 17–18. Wimbush argues that the testimony is inadmissible because it does not necessarily involve the same gun and the witness's observation was not sufficiently recent. ECF No. 612 at 4–7.

With respect to whether the witness's testimony concerns the "same gun," I agree with the Government that the testimony satisfies the standard applied in *Miller*. According to the Government, the witness will testify that Wimbush showed him a picture of what appeared to be the same .223 caliber semiautomatic assault rifle discovered in Wimbush's vehicle on September 6, 2018, and made comments reflecting his possession of that firearm. ECF No. 609 at 17. Wimbush argues that "[i]n the cited cases, the witnesses actually saw the defendant in physical possession of the weapon, and were able to confirm that it was the same gun," whereas here the witness only saw a photo of "what

5

*appeared to be*" the .223 found in Wimbush's vehicle. ECF No. 612 at 6. Yet, for purposes of relevance, the Government must only demonstrate that the Photograph Testimony "tends to show that [Wimbush] knowingly possessed the gun." *Caldwell*, 760 F.3d at 281. Evidence that Wimbush possessed what appeared to be a .223 caliber assault rifle in January or February 2018 "tends to show"—in that it makes it more likely, even if it does not prove definitively—that Wimbush was aware of the .223 caliber rifle discovered in his vehicle on September 6, 2018. Moreover, in *Miller*, there would have been no way for the witness to confirm definitively that the firearm she saw was the same firearm the defendant possessed—the witness could merely opine that the firearms appeared to be the same. That is precisely the testimony the Government seeks to admit, here.[1]

However, I agree with Wimbush that, under applicable precedents, the Photograph Testimony is inadmissible because the witness's observation was not sufficiently recent in comparison to Wimbush's arrest. *Caldwell* hypothesized that testimony concerning the defendant's possession of the same firearm two hours before the charged offense would be admissible. 760 F.3d at 282–83. Furthermore, "several months prior to the [charged] crime" is the longest period that has qualified as sufficiently recent under any of the cited decisions. *See Gov't of Virgin Islands v. Joseph*, 685 F.2d 857, 859–61 (3d Cir. 1982); *see also Washington*, 962 F.3d at 901 (testimony regarding past possession approximately three months before charged offense admissible to show constructive possession); *Miller*, 673 F.3d at 695 (two months sufficiently recent). None of the cited decisions find that anywhere close to the seven-month period at issue, here, satisfies the recency factor articulated in *Miller* and *Caldwell*. The Government contends that these decisions also do not foreclose a conclusion that seven months is sufficiently recent and that their reasoning extends to this

---

[1] Although I conclude that the Photograph Testimony concerns the "same gun" for purposes of admissibility under *Miller* and *Caldwell*, nothing would prohibit Wimbush from cross-examining the witness as to the reliability of his identification.

6

case. However, by their terms, the cases focus on the temporal proximity between the witness's observation and the charged offense. *E.g.*, *Miller*, 673 F.3d at 694–95 (concluding two months was "relatively recent"). Furthermore, by opining that two hours would be sufficiently recent, *Caldwell* indicated that a period of several months is toward the outer bounds of what satisfies the recency standard. 760 F.3d at 282–83. For these reasons, I am unable to conclude, under existing precedent, that seven months is sufficiently recent to admit testimony concerning an observation of the same firearm.[2]

The parties also dispute the extent to which recency is a question of weight versus admissibility. *See* ECF No. 621 at 50–56. In this regard, the case law is clear that the recency between the witness's observation of the prior possession and the date of the charged offense is an element of admissibility, not merely one of weight. *See, e.g.*, *Miller*, 673 F.3d at 695 (concluding testimony was "admissible" because it was sufficiently recent and concerned the same gun). That period of time bears on the probative value of the witness's prior observation—that is, the likelihood that the defendant possessed, on the date of the charged offense, the same firearm with which the witness observed the defendant on a prior occasion. *See Caldwell*, 760 F.3d at 282–83 (noting that if a witness observed the defendant in "possess[ion] a black handgun earlier [on the same] evening [of his arrest], . . . it is less likely that a similar black handgun was unknowingly deposited in [the defendant's]

---

[2] While the case law focuses on recency in terms of temporal duration, duration primarily serves as a proxy for the likelihood that the defendant acquired or unknowingly came into possession of another, similar firearm after the witness's initial observation. *See Caldwell*, 760 F.3d at 282–83 (recency of witness's prior observation relevant to whether defendant came into possession of different—but similar looking—firearm). Thus, in certain circumstances, it could be appropriate to consider other factors bearing on the likelihood that the defendant came into possession of a similar firearm. However, because there is no such evidence before me, here, my analysis is restricted to whether the witness's observation was sufficiently recent in comparison to the periods of time endorsed in other decisions. As discussed *supra*, a period of seven months does not qualify as "recent" under applicable precedent.

backpack"). Thus, I am unable to treat the question of whether seven months is sufficiently recent as one of mere weight or credibility. That period goes toward the admissibility of the testimony. And, because I conclude that seven months is not sufficiently recent under existing precedents, the Photograph Testimony is not admissible.

Having concluded that, under existing precedent, the Photograph Testimony is not sufficiently relevant to Wimbush's knowledge that the .223 caliber rifle was in his vehicle on September 6, 2018, I need not assess the third and fourth factors under *Brown*—specifically, whether, under Rule 403, the prejudicial effects substantially outweigh the probative value, and whether a limiting instruction is appropriate.

### B. Cross Examination of Detective Ramos

The Government requests that the Court preclude Wimbush from cross-examining Detective Ramos regarding the 2004 psychological evaluation and the 2016 allegations that Ramos participated in planting evidence. For the reasons which follow, I will preclude cross-examination on the 2004 psychological evaluation, and I will permit limited cross-examination on the 2016 allegations, as prescribed *infra*.

"Pursuant to [Federal Rule of Evidence] 608(b), a witness is subject to cross examination on specific instances of conduct probative of the witness's character for truthfulness or untruthfulness. Cross-examination on these instances is subject to the protections provided in Federal Rule of Evidence 403." *United States v. Hunter*, Crim. No. 06-204 (MCR), 2007 WL 470444, at *3 (M.D. Fla. Feb. 13, 2007); *accord United States v. Saada*, 212 F.3d 210, 219 (3d Cir. 2000). Rule 608(b) permits "cross-examination into the prior conduct of a witness only if the trial court determines that the conduct is probative of the witness's truthfulness or untruthfulness, a ruling that is within the discretion of the trial court." *United States v. McNeill*, 887 F.2d 448, 453 (3d Cir. 1989). "[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or

support the witness's character for truthfulness." *United States v. Georgiou*, 777 F.3d 125, 144 (3d Cir. 2015).

First, with respect to the 2004 psychological evaluation, any probative value is substantially outweighed by its prejudicial effect. In my Opinion denying a Motion to Suppress Evidence in this case, I concluded: "In light of the age of the internal affairs proceeding, and the minimal relevance to the instant matter, the Court does not find that the psychologists' opinion bears on Detective Ramos's credibility in this matter." ECF No. 479 at 32 n.16. In that regard, I have already concluded that the psychological opinion is at most minimally probative of Ramos's character for truthfulness. I reviewed the psychological opinion again, and I see no reason to reach a different conclusion, here. Furthermore, permitting Wimbush to cross-examine Detective Ramos on an unadjudicated psychological opinion from more than fifteen years ago that is unrelated to this case would be highly prejudicial. It would likely undermine Detective Ramos's credibility in the eyes of the jury. Because the opinion has limited probative value but would be highly prejudicial, Wimbush's cross-examination on this topic is precluded under Rule 403.

Second, I will permit limited cross-examination related to the 2016 firearm recovery incident. Whether Detective Ramos participated in planting evidence within the past five years is unquestionably probative of his character for truthfulness. However, because the 2016 incident has not resulted in any disciplinary action against Ramos by the Trenton Police Department, and the civil lawsuit is ongoing without having reached a final decision, cross-examination on this topic is potentially prejudicial. *See United States v. Taylor*, 417 F.3d 1176, 1178–80 (11th Cir. 2005) (upholding district court's preclusion under Rule 608(b) of cross-examination regarding citizen complaints that a police officer serving as a government witness had planted evidence because the police department did not take disciplinary action against the officer and dismissed the complaints as unfounded). Accordingly, Wimbush may only ask Detective Ramos the following question regarding

9

the 2016 incident on cross-examination: "have you ever participated in planting evidence or generating a false report?" Limiting the cross-examination in this manner will allow Wimbush to inquire into past conduct that is potentially probative of Detective Ramos's character for truthfulness without unduly prejudicing the Government.

### III.   CONCLUSION

For the reasons set forth above, the Government's Motion is **GRANTED** in part and **DENIED** in part. An appropriate form of Order is filed herewith.

Date: August 31, 2021                                              /s/ Freda L. Wolfson
                                                                   Hon. Freda L. Wolfson
                                                                   U.S. Chief District Judge