## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JEROME ROBERTS, TIMOTHY WIMBUSH, and TAQUAN WILLIAMS, | Crim. No. 19-134 (FLW)<br><br>**ORDER** |

**THIS MATTER** comes before the Court upon a motion (the "Motion") by defendant Jerome Roberts ("Defendant Roberts"); it appearing that defendants Timothy Wimbush and Taquan Williams did not join in the present Motion, as well as not taking any position on issues raised by Defendants Roberts, and the Government also having taken no position; the Court, having reviewed Defendant Roberts' submissions in connection with the Motion, makes the following findings:

1.     On September 13, 2021, the Court entered Standing Order 2021-08, which, effective September 20, 2021, requires anyone other than "excepted persons" to provide proof of vaccination for COVID-19 or a negative PCR test result obtained within 72 hours of entering the courthouse. Standing Order 2021-08: COVID-19 Vaccination and Testing Requirements of Visitors to Court Facilities and of Federal Detainees in the District of New Jersey (Sept. 13, 2021). "Excepted persons" are "petit and grand jurors; individuals younger than 12 years of age; and persons who will be onsite . . . for less than 15 minutes." *Id.* In a separate order, the Court has required all court employees to either provide proof of vaccination or a negative PCR test result within 72 hours of entering the courthouse. Effective October 19, 2021, all court employees, except those who may be granted a

medical or religious exemption, must be vaccinated to enter the courthouse, and no testing alternative will be available.

2.      In a letter to the Court dated September 16, 2021, Defendant Roberts requested that the Court expand the definition of "excepted persons" to include the family members of the defendants in this case, who have been observing trial before the Standard Order 2021-08 took effect. ECF No. 640 at 1. Defendant Roberts argues that applying Standing Order 2021-08 to the defendants' family members results in a closure of the courthouse to those family members, and thereby violates the defendants' rights under the Sixth Amendment to a public trial. *Id.*[1] By email communication dated September 17, 2021, the Court informed the parties that as an accommodation to continue to observe trial, the defendants' family members could present, as an alternative to a PCR test, a negative rapid test result obtained within 72 hours of entering the courthouse. In this Order, the Court now addresses Defendant Roberts' request that the defendants' family members receive a full exemption from Standing Order 2021-08.

3.      The Sixth Amendment provides, *inter alia*, that "the accused shall enjoy the right to a . . .

---

[1] Defendant Roberts also asserts that Standing Order 2021-08 infringes on the public's right to a public trial, which is protected under the First Amendment. *Id.* n.1 (citing *Presley v. Georgia*, 558 U.S. 209, 212 (2010) (per curium)). However, Defendant Roberts has not argued that he represents or otherwise has standing to invoke the First Amendment rights of the public at large, or any particular members of the public. And, other than noting in a footnote that the First Amendment affords such a right, Defendant Roberts does not offer any analysis under the First Amendment specific to this case. Accordingly, the Court interprets Defendant Roberts' challenge to arise only under the Sixth Amendment.

public trial." U.S. Const. amend. VI. However, a criminal defendant's right to a public trial "may give way in certain cases to other rights or interests." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). To determine whether a courtroom closure violates the Sixth Amendment right to a public trial, courts generally must consider the following factors: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced," (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) "it must make findings adequate to support the closure." *Id.* at 48.

4.   However, whereas *Waller* addressed a complete courtroom closure, certain courts of appeals have applied lower standards to closures that are only "partial." *See, e.g.*, *United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005) (citing cases from the Ninth, Tenth, and Eleventh Circuits); *see also United States v. Greene*, 431 Fed. App'x 191, 194, 197 (3d Cir. 2011) (referring to a court security's officer's temporary exclusion of the defendant's brother from the courtroom on one day due to limited seating as a "partial closure"); *United States v. Barrow*, Crim. No. 20-127, 2021 WL 3602859, at *9 (D.D.C. Aug. 13, 2021). In *Smith*, a partial closure occurred because "only those individuals who were unwilling or unable to show photo identification" were prevented from entering the courtroom. 426 F.3d at 573. Here, during rising incidence of COVID in this State, and the health justifications set forth in the Standing Order and discussed *infra*, a closure only occurs for those individuals who are unwilling or unable to get vaccinated or tested within the parameters set forth in the Standing Order. Accordingly, Standing Order 2021-08 effects, at most, only a "partial" closure.

5.   There are two standards applicable to partial closures that are discernible in the case law, and I apply each standard, in turn, here. Because Standing Order 2021-08 satisfies both

3

standards, Defendant Roberts' request that the defendants' family members receive a full exemption is unwarranted.

## TRIVIALITY STANDARD

6.    The first standard applicable to partial closures assesses whether the closure is so "trivial[]" that it does not have the "potential to undermine the values advanced by the public trial guarantee." *Greene*, 431 Fed. App'x at 195. These values "include (1) ensuring a fair trial; (2) reminding the government and the judge 'of their responsibility to the accused and the importance of their functions'; (3) encouraging witnesses to come forward; and (4) discouraging perjury." *Id.*; *Barrow*, 2021 WL 3602859, at *9. In *Greene*, a court security officer had excluded the defendant's brother from the courtroom during the morning of voir dire due to a lack of seating in the courtroom. 431 Fed. App'x at 193– 94. The court held that the temporary exclusion did not implicate the defendant's Sixth Amendment right because it was "limited in both duration and scope and was therefore unlikely to jeopardize the aims served by the public trial guarantee." *Id.* at 196–97. Likewise, in *Barrow*, the court addressed the use of an overflow room for members of the public due to health concerns related to COVID-19 and intermittent audio technology issues in the overflow room during the trial. 2021 WL 3602859, at *11. Because the defendant never demonstrated that the use of the overflow room "affected the conduct of the Government, the Court, or the jury during the trial," the partial closure did not implicate the defendant's Sixth Amendment right. *Id.*

7.    Here, the partial closure effected by Standing Order 2021-08 does not "undermine the values advanced by the public trial guarantee," and therefore does not trigger the Sixth Amendment right to a public trial. *Greene*, 431 Fed. App'x at 195. The closure at issue, here, arguably carries a slightly greater exclusionary effect than occurred in *Barrow* and *Greene* because Standing Order 2021-08 may prevent certain individuals from attending

trial during limited periods, possibly on multiple days, if they are unable to obtain a negative test result and refuse to be vaccinated. But even assuming certain family members are unable to attend the trial during limited periods, Defendant Roberts does not contend—and the Court sees no evidence—that such limited absences would "affect[] the conduct of the Government, the Court, or the jury during the trial." *Id.* There is certainly no evidence that Standing Order 2021-08 will prevent all—or even most— members of the public who wish to see the trial from attending. An audience will be present to "remind[] the government and the judge 'of their responsibility to the accused and the importance of their functions,'" and to "prevent[] perjury." *Greene*, 431 Fed. App'x at 195–96.

8.  Under these circumstances, Standing Order 2021-08 does not rise to the level of a closure that undermines the values served by the right to a public trial. Nevertheless, I will also consider, *infra*, whether the Standing Order is permissible under the second standard courts have applied to partial closures.

## MODIFIED *WALLER* STANDARD

9.  Under the second standard, courts apply a modified version of the *Waller* test, such that "where a narrow, 'partial closure' occurs, the first *Waller* factor is less rigorous." *Smith*, 426 F.3d at 571 (citing cases from the Ninth, Tenth, and Eleventh Circuits). "In such cases, there must only be a 'substantial reason,' rather than an 'overriding interest' justifying the closure." *Id.* For example, in *Smith*, the Second Circuit held that requiring "photo identification at the door to the federal [courthouse] building effected at least a 'partial closure' of [the defendant's] trial." *Id.*

10. In considering the first *Waller* factor, Standing Order 2021-08 effects only a partial closure because the courtroom remains open to the public and will limit attendance only to the

extent that certain members of the audience are unwilling or unable to comply with the conditions of entry. Accordingly, "a 'substantial reason,' rather than an 'overriding interest,'" will satisfy the first *Waller* factor under *Smith. Id.*

11.  An interest in "protect[ing] the health and safety of the public and Court staff," which is the stated purpose of Standing Order 2021-08, easily satisfies the first *Waller* factor. As one district court concluded in reviewing a similar restriction on trial attendance during COVID-19, "'[p]rotecting the public from unnecessarily spreading a potentially fatal virus is not only a purpose the government may pursue; it is one it has an obligation to'" advance. *United States v. Bledson*, Crim. No. 20-99, 2021 WL 1152431, at *3 (M.D. Ala. Mar. 25, 2021) (quoting Stephen E. Smith, The Right to a Public Trial in the Time of Covid-19, 77 WASH. & LEE L. REV. ONLINE 1, 6 (2020)); *see also Legatus v. Sebelius*, 901 F. Supp. 2d 980, 995 (E.D. Mich. 2012) ("The court has no doubt that every level of Government has an interest in promoting public health as a general matter . . . ."). Without requiring members of the public to provide proof of vaccination or a recent negative COVID test, the interest in protecting the public and court staff from infection with a deadly virus would likely be prejudiced. It should go without saying—although, due to Defendant Roberts' suggestion in his letter, the Court apparently must reiterate— that this interest is entirely unrelated to "assisting President Biden's or Governor Murphy's policy of imposing vaccine mandates." ECF No. 640 at 2.

12.  With respect to the second *Waller* factor, the scope of Standing Order 2021-08 is "no broader than necessary to protect th[e] interest" in public health. 467 U.S. at 45. The Order requires visitors to provide either proof of vaccination or a negative PCR test result obtained within 72 hours of entering the courthouse. This requirement is identical to the protocol currently in effect for court employees, who, after October 19, 2021, may not enter

the courthouse unless they are fully vaccinated. Requiring vaccination or a recent negative PCR test result is necessary to protect the health of those attending the trial. According to guidance from the Centers for Disease Control and Prevention (CDC) issued on July 27, 2021, which was last updated on September 1, 2021, "[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19." CDC, Interim Public Health Recommendations for Fully Vaccinated People, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fullyvaccinated-guidance.html (updated Sept. 1, 2021) (last visited Sept. 19, 2021) ("July 27 CDC Guidance"). The guidance further provides that "[i]nfections in fully vaccinated people (breakthrough infections) happen in only a small proportion of people who are fully vaccinated, even with the Delta variant," and that "when these infections occur among vaccinated people, they tend to be mild." *Id.* For these reasons, in its "Recommendations for Indoor Settings," the CDC states that the "[r]isk of [COVID-19] infection, severe disease, and death is reduced for fully vaccinated people." *Id.* The CDC does not state that any other mitigation tactic is as—or more—effective than vaccination. Due to the unique effectiveness of vaccination, the Court's interest in protecting the health of the public and court staff is served by requiring vaccination before entering the courthouse.

13.     Moreover, Standing Order 2021-08 offers an alternative that reduces the burden of the vaccination requirement. Recognizing the importance of a defendant's right to a public trial, the Court accepts a recent negative PCR test result as an alternative to vaccination. This alternative provides flexibility to those who, for whatever reason, do not wish to receive a vaccine. As the CDC recognizes, rapid antigen tests "are generally less sensitive than [PCR tests]," CDC, Interim Guidance for Antigen Testing for SARS-CoV-2,

https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antigen-tests-guidelines.html

(Sept. 9, 2021) (last visited Sept. 19, 2021) ("CDC Testing Guidance"), and for that reason, the Court generally requires a PCR test rather than a rapid test. Because the Court has not fully closed the courthouse, but rather permits entry based on either proof of vaccination or a negative PCR test result, the Court has, at most, "effected [only] a very narrow closure," *Smith*, 426 F.3d at 573, such that Standing Order 2021-08 is not broader than necessary to effectuate the interest in protecting public health.

14. The Supreme Court has noted, in *dicta*, "a special concern for assuring the attendance of family members of the accused." *See Sevencamp v. Herbert*, 342 F.3d 69, 74 (2d Cir. 2003) (citing *In re Oliver*, 333 U.S. 257, 271–72 & n.29 (1948)); *see also In re Oliver*, 333 U.S. at 271–72 ("[A]ll courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."). Accordingly, certain courts "have required particularized findings justifying" the exclusion of "family members[] . . . before concluding that a closure was no broader than necessary." *Id.* at 573 n.2. Here, to further protect the defendants' right to a public trial and facilitate the attendance of their family members, on September 17, 2021, the Court issued guidance to the parties in this case that it will accept a negative rapid test result from the defendants' family members, received within 72 hours of entry. Because the results of a rapid test are typically available more quickly than are those of a PCR test, rapid testing offers greater flexibility in scheduling a test that will yield a result within 72 hours of entering the courtroom. Likewise, in addition to the widely available testing sites, individuals can access self-administered rapid tests at local pharmacies, further reducing the burden of testing. And, as the Court reminded the parties in its email communication dated September 17, 2021, free PCR and rapid tests are widely available at testing sites across New Jersey.

*See* New Jersey COVID-19 Information Hub, Where can I get free, public COVID-19 testing or treatment?, https://covid19.nj.gov/faqs/nj-information/testing-and-treatment/where-can-i-get-free-public-covid-19-testing-ortreatment (last updated Sept. 12, 2021). By providing additional flexibility to the defendants' family members, the Court has further reduced the already minimal burdens the Order imposes.

15.  In his letter to the Court, Defendant Roberts suggests that Standing Order 2021-08 is overly broad and should not apply to the defendants' family members because the 16 members of the jury are exempt. As Defendant Roberts is undoubtedly aware given his specific request for such a policy, the Court exempted jurors from Standing Order 2021-08 to protect the defendants' right to a representative jury venire. Furthermore, applying Standing Order 2021-08 to jurors poses challenges that are inapplicable to members of the public. With respect to a vaccination requirement, to ensure a representative venire, the Court would have to *impose* such a requirement on all jurors. There would be no option to simply exclude unvaccinated jurors from the venire because the venire would no longer be representative. In contrast, Standing Order 2021-08 does not require any member of the public to receive the vaccine or a negative test result. These are merely conditions of entry, and members of the public are free not to attend the trial if they choose not to satisfy either condition. Likewise, requiring testing for the 16 jurors imposes substantial administrability problems, including delays at the testing sites or in receiving results that could continually disrupt the trial, which simply do not apply to members of the public. Accordingly, the justification for exempting jurors from Standing Order 202108 does not require a full exemption for the defendants' family members.

16.  Defendant Roberts also suggests that Standing Order 2021-08 is overly broad because the

"Court already requires the wearing of masks in public indoor settings, consistent with CDC guidance." Yet, the CDC guidance does not treat vaccination and masking as equivalent alternatives. Rather, the guidance states that "fully vaccinated people can *further* reduce their risk of becoming infected with the Delta variant and transmitting it to others by wearing a mask in public indoor settings in areas of substantial or high community transmission." July 27 CDC Guidance (emphasis added). As of September 17, 2021, Mercer County, New Jersey is an area of high community transmission. CDC, COVID-19 Integrated County View, Mercer County, New Jersey, https://covid.cdc.gov/covid-data-tracker/#county-view (last visited Sept. 19, 2021). Thus, the Court's masking requirement is not a sufficient alternative to vaccination or testing.

17.    Turning to the third *Waller* factor, the Court has considered "reasonable alternatives to closing the proceedings," 467 U.S. at 45, none of which is adequate. As discussed *supra*, the Court considered merely requiring attendees to wear a mask, without any vaccination or testing requirement, but masking is not an equivalent alternative to vaccination or a negative test result. As such, the Court requires masking in addition to vaccination or a negative test, particularly given that the trial is occurring in an area of high community transmission. The Court also considered exempting the defendants' family members from Standing Order 2021-08 altogether. However, the Court is unable to conclude that the limited inconvenience associated with obtaining a test—or, alternatively, a vaccine—outweighs the threat to public health posed by the attendance of apparently unvaccinated individuals who do not provide a negative test result. Furthermore, the Court considered—and, in fact, adopted—a lesser requirement for the defendants' family members by permitting them to submit rapid test results. Finally, the Court considered allowing members of the public to view the proceedings from an overflow room without providing

proof of vaccination or a negative test result. However, the Court does not view this practice as an adequate alternative to vaccination or testing, as these members of the public would still come into contact with other court employees.

18.    Finally, with respect to the fourth *Waller* factor, "the particular interest, and threat to that interest, must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Tucker v. Superintendent Graterford SCI*, 677 Fed. App'x 768, 778–79 (3d Cir. 2017) (quoting *Presley*, 558 U.S. at 215). As the Court discussed *supra*, Standing Order 2021-08 is necessary to protect the public and court staff from COVID-19, the transmission of which has increased rapidly in recent months due to the emergence of the Delta variant. The Order is tailored to protect public health while simultaneously upholding the defendants' rights to a fair trial. The Court has elaborated on the interests at stake and the reasons Standing Order 2021-08 is sufficiently tailored to those interests. Thus, the Court has satisfied the fourth factor under *Waller*.

Accordingly, for the reasons set forth herein, and for good cause shown,

**IT IS** on this 21st day of September, 2021,

**ORDERED** that Defendant Roberts' challenge to Standing Order 2021-08 is **DENIED**.


/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge