<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEROME ROBERTS, <br><br> Defendant. | Criminal Action No. 19-00134 (GC) <br><br> **<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

    **THIS MATTER** comes before the Court upon Defendant Jerome Roberts' objection to paragraph 293 of the final Presentence Investigation Report ("PSR").  The Court allowed supplemental briefing on the objection from both Defendant and the Government.  The Court has carefully considered the submissions and decides the matter without oral argument under Local Civil Rule 78.1(b), which applies to criminal cases pursuant to Local Criminal Rule 1.1.  For the reasons stated herein, and other good cause shown, the Court **OVERRULES** the objection.

**I.**    **<u>BACKGROUND</u>**

    On February 27, 2020, Defendant Jerome Roberts was charged in a Third Superseding Indictment with conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846 and with unlawful distribution and possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  (ECF No. 677.)  Pursuant to the Indictment, Defendant was charged as a member of a conspiracy to distribute heroin in and around Trenton, New Jersey, in 2018, and with having distributed or possessed with intent to distribute 100 grams or more of heroin in August 2018.  (*Id.* at 2-12.)

The case proceeded to trial on September 9, 2021, and on October 8, 2021, a unanimous jury found Defendant guilty of both counts: conspiracy to distribute or possess with intent to distribute a mixture or substance containing a detectable amount of heroin, and distribution or possession with intent to distribute a mixture or substance containing a detectable amount of heroin.  (ECF No. 684 at 1, 5.)  The jury also unanimously found that "the government proved beyond a reasonable doubt that the quantity of heroin involved in the conspiracy that was reasonably foreseeable to [D]efendant . . . was one kilogram or more" and that "the government proved beyond a reasonable doubt that the weight of the mixture or substance containing a detectable amount of heroin that [Defendant] . . . distributed or possessed with intent to distribute was 100 grams or more."  (*Id.* at 3, 6.)

Sentencing was initially set for February 10, 2022.  (ECF No. 679.)  It was subsequently rescheduled on multiple occasions with the consent of the parties pending a decision from the Third Circuit Court of Appeals in *United States v. Lewis*, 58 F.4th 764 (3d Cir. 2023).  (ECF Nos. 714, 719, 732, 778.)  The case was reassigned to the undersigned on January 30, 2023.  (ECF No. 777.)  Sentencing was then set for April 6, 2023.

On March 23, 2023, counsel for Defendant wrote to request an adjournment of sentencing. (ECF No. 781.)  The request was granted and sentencing was reset for July 20, 2023.  (ECF No. 782.)  On the morning of July 20, counsel for Defendant appeared before the Court and raised for the first time this objection as to Defendant's final PSR that had not been previously raised or addressed by the parties.  (ECF No. 811.)  Defense counsel requested an opportunity to fully brief the issue that might impact the request for a variance, in light of Defendant's potential sentencing exposure.

Accordingly, the Court set a briefing schedule and reset the sentencing date for October 5, 2023.[1]  (ECF Nos. 811 & 833.)  Defendant and the Government then filed supplemental briefs. The October 5 sentencing date was converted to a status conference, however, to address several issues that had been raised, including between Defendant and his counsel.  (ECF Nos. 835-836.) The Court now issues this Memorandum Opinion resolving Defendant's objection to the final PSR in advance of sentencing.

## II.   <u>PARTIES' ARGUMENTS</u>

Defense counsel acknowledges that pursuant to the Third Circuit's decision in *United States v. Lewis*, 58 F.4th 764 (3d Cir. 2023), "Mr. Roberts is a career offender under Chapter Four of the Sentencing Guidelines and, as reflected at paragraph 299 of the PSR, Mr. Roberts' offense level is a 34, under U.S.S.G. § 4B1.1(b)(2)."  Defendant objects, however, to the statement at paragraph 293 of the PSR that his "offense level—were he *not* a career offender—would be level 30, 'because defendant is accountable for at least 1 kilogram of heroin but less than 3 kilograms of heroin, pursuant to U.S.S.G. § 2D1.1(c)(5).'"  Defendant contends that his non-career-offender base level should be calculated at a level 24, not a level 30, based on "[a]t least 100 G but less than 400 G of Heroin" pursuant to U.S.S.G. § 2D1.1(c)(8).  Defense counsel submits that this objection is relevant because "the discrepancy between Mr. Roberts' regular sentencing exposure versus his career offender sentencing exposure is evidence of, and would result in, an unreasonable sentence were it not mitigated by a variance."

---

[1]      *See United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002) ("[T]he court may allow new objections to be raised at any time before imposing sentence if good cause is shown."  (citing Fed. R. Crim. P. 32(b)(6)(D))); *see also United States v. Ausburn*, 502 F.3d 313, 327 (3d Cir. 2007) ("[T]he right to object to sentencing information at any time upon good cause and the option to move for a continuance to avoid unfair surprise—will provide an effective remedy in individual cases.").

Citing *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), defense counsel argues that "Mr. Roberts' non-career-offender offense level must be calculated based solely upon the quantity of actual drugs properly attributable to Mr. Roberts *for purposes of sentencing*, and which the government can prove by a preponderance of the evidence, and not based upon intended drug transactions." (emphasis in original). Counsel claims that "there is no basis to conclude that the measure of drugs used for purposes of calculating a defendant's offense level is anything other than actual drug quantities." Defendant insists that, notwithstanding the jury's finding, "the quantity of actual drugs properly attributable to Mr. Roberts . . . is the 100 grams of heroin the jury found Mr. Roberts possessed with intent to distribute on August 10, 2018," and no more.

In opposition, the Government submits that the PSR "accurately sets forth that . . . [D]efendant is responsible for at least 1 kilogram but less than 3 kilograms of heroin under the United States Sentencing Guidelines." The Government argues that there is no support for redefining "'quantity' in the Drug Quantity Table of U.S.S.G. § 2D1.1(c)" to mean the "actual quantity" a defendant distributed or possessed with intent to distribute "in the context of drug trafficking conspiracies prosecuted under 18 U.S.C. § 846." It also argues that Defendant's proposed reading of the Sentencing Guidelines is contrary to clear Third Circuit precedent that holds that the quantity of drugs a conspirator can be held accountable for includes the amounts a conspirator agreed to distribute or possessed with intent to distribute, even if not actually distributed or possessed. Ultimately, the Government says that this dispute is immaterial because, even accepting Defendant's position, the jury's verdict and facts in the record prove by a preponderance of the evidence that Defendant's conspiracy conviction "involved an 'actual quantity' of heroin and fentanyl in excess of 1 kilogram that was actually distributed and possessed with intent to distribute during and in furtherance of the conspiracy" by Defendant.

III.   **DISCUSSION**

The parties agree that Defendant is properly classified as a career offender with an offense level of 34 under governing precedent.   The objection to paragraph 293 of the final PSR therefore does not affect the ultimate Sentencing Guidelines calculation.   Nevertheless, the Court will address the objection because it is relevant to sentencing.   And having carefully considered the parties' submissions, the Court finds, by a preponderance of the evidence, that the final PSR accurately calculates Defendant's non-career-offender base offense level at 30.[2]

In *United States v. Banks*, the defendant was convicted of four counts of wire fraud and one count of aggravated identity theft, and sentenced at an offense level of 19 under the loss enhancement to the fraud guideline.   55 F.4th 246, 253 (3d Cir. 2022).   Even though the defendant's fraudulent scheme had not resulted in the defendant obtaining a "single dollar," the district court adjusted the defendant's offense level from 7 to 19 because the "intended loss" (*i.e.*, the amount of money the defendant tried to obtain) was greater than $250,000.00.   *Id.* at 251-53.

The appeal in *Banks* turned on the meaning of the term "loss" in § 2B1.1 of the Sentencing Guidelines.   *Id.* at 255.   The Third Circuit noted that Guideline § 2B1.1 has "a graduated scale based on the monetary amount of loss."   *Id.* at 257.   In other words, "[a]s the victim's monetary loss grows, so too does the enhancement to the defendant's offense level."   *Id.*   However, the Court emphasized that the Guideline nowhere mentioned "intended loss" as a component of "loss."   *Id.* at 258.   And the Court's "review of common dictionary definitions of 'loss' point[ed] to an ordinary meaning of 'actual loss.'"   *Id.*   Therefore, the Court held that "in the context of a sentence

---

[2]   "The standard of proof under the Guidelines for sentencing facts is the preponderance of the evidence.   The Government bears the burden of demonstrating a sentence should be calculated by using a higher base offense level."   *United States v. Boone*, Crim. No. 20-00185, 2022 WL 14558235, at *2 (D.N.J. Oct. 25, 2022) (citations omitted).

enhancement for basic economic offenses, the ordinary meaning of the word 'loss' is the loss the victim actually suffered." *Id.* And because the defendant in *Banks* had not obtained any actual amount of money through his wire fraud scheme, the Court of Appeals found that no enhancement should have been applied under Guideline § 2B1.1. *Id.*

Here, Defendant argues that the reasoning in *Banks* leads to the conclusion that his base offense level under Guideline § 2D1.1(c) is a level 24, not a level 30, because it has not been shown that his drug trafficking conspiracy resulted in him *actually* distributing or possessing with intent to distribute more than one kilogram of heroin. The Court disagrees.

The drug quantity an individual defendant may be accountable for in a drug trafficking conspiracy is not limited solely to the drugs that the individual defendant actually distributed or possessed with intent to distribute. *See, e.g.*, *United States v. Whitted*, 807 F. App'x 145, 147 (3d Cir. 2020) ("The relevant quantity [for purposes of sentencing] obviously includes the drugs the defendant himself distributed or possessed. But it can also include 'drugs possessed, distributed, manufactured, sold, or otherwise handled by persons other than the defendant.'" (citation omitted)). Indeed, a defendant substantially involved in a conspiracy may also be accountable for the drugs distributed or possessed with intent to distribute by the defendant's co-conspirators so long as those drugs were "within the scope of, or in furtherance of, the conspiracy and were reasonably foreseeable to the defendant as a consequence of the unlawful agreement." *United States v. Williams*, 974 F.3d 320, 366 (3d Cir. 2020); *see also United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992) ("[W]hether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's involvement in the conspiracy.").

For purposes of sentencing, the "relevant conduct provision" of the Sentencing Guidelines has long been interpreted to mean that a drug trafficking conspirator may be responsible for the quantity of drugs involved that were (1) within the scope of the jointly undertaken activity, (2) in furtherance of that criminal activity, and (3) reasonably foreseeable in connection with that criminal activity. *See, e.g.*, *Collado*, 975 F.2d at 991-92 (citing U.S.S.G. § 1B1.3); *United States v. Womack*, 2022 WL 4376073, at *3 (3d Cir. Sept. 22, 2022) ("In determining the drugs attributable to a defendant at sentencing . . . [f]or conspiracies, a court may also look to 'all acts and omissions of others' within the scope of the joint undertaking, in furtherance of the crime, and which are reasonably foreseeable." (citations omitted)); *see also United States v. Perez*, 280 F.3d 318, 354 (3d Cir. 2002) (finding the defendant "accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook" (citation omitted)).  To make such attribution, the Court must undertake "a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy." *Collado*, 975 F.2d at 995.

Defendant has not cited to any authority that supports his argument that *Banks* should be extended to hold that a defendant in a drug conspiracy is only accountable for the drug quantity that the defendant actually distributed or possessed with intent to distribute, without any consideration as to the quantity of drugs possessed or distributed by the defendant's co-conspirators who were engaged in the criminal activity as part of the joint undertaking and were reasonably foreseeable to the defendant.  To the contrary, the Third Circuit has clarified since *Banks* that its holding must be viewed in the context of the offense and the Sentencing Guidelines' language at issue in each specific case.  In *United States v. Upshur*, for example, the Court of

Appeals considered whether under the "Tax Loss" table in Guideline § 2T4.1, the amount of the "tax loss" encompassed "intended loss," not just "actual loss." 67 F.4th 178, 181 (3d Cir. 2023). "Despite the superficial similarities between the loss tables at § 2B1.1 and § 2T4.1," the Third Circuit held that *Banks* did not apply to the tax loss table in Guideline § 2T4.1, because § 2T1.1 "provides a . . . definition of 'tax loss'" that, "[i]n the context of tax crimes, . . . encompasses both actual and intended losses from tax fraud schemes." *Id.*

Here, too, the drug quantity table in Guideline § 2D1.1(c) is clearly distinguishable from the fraud loss table in Guideline § 2B1.1. Unlike the latter, the drug quantity table in Guideline § 2D1.1(c) does not address the issue of "loss." Instead, Guideline § 2D1.1(c) addresses what quantity of drugs a defendant may be held to account. And it has long been the case that, in accordance with the Sentencing Guidelines' relevant-conduct standard, a drug trafficking conspirator may be held accountable for the quantity of drugs involved in the joint undertaking that was "reasonably foreseeable . . . as a consequence of the unlawful agreement." *Williams*, 974 F.3d at 366. There is no indication that *Banks* intended to change that precedent.

In any event, the Court finds that for purposes of sentencing the Government has proven, by a preponderance of the evidence, that as part of the conspiracy, Defendant distributed or possessed with intent to distribute at least one kilogram but less than three kilograms of heroin.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[3]   During trial, an agent from the FBI testified, based on controlled purchases, that a brick contains approximately one gram of heroin. (ECF No. 642 at 50-52.) And the parties do not dispute that testimony in their supplemental briefing. Thus, the Court will accept that one kilogram is equal to about 1,000 bricks. *See United States v. Diaz*, 951 F.3d 148, 159 (3d Cir. 2020) ("[W]e permit 'some degree of estimation' in drug conspiracy cases because 'the government usually

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

      Moreover, the PSR sets forth a sufficient basis to find that Defendant conspired to actually distribute or possess with intent to distribute at least one kilogram of heroin. The PSR states that "in the summer of 2018, . . . Davias Taylor introduced [David] Antonio to Jerome Roberts and Jakir Taylor, and Antonio agreed to and did supply Roberts and Taylor hundreds of bricks of heroin at a time. The investigation revealed that . . . Antonio . . . supplied Roberts and Davias Taylor with approximately 100 bricks of heroin; and then with approximately 500 bricks of heroin on another occasion." (PSR ¶ 161.) On "August 9, 2018, law enforcement intercepted a call between Antonio and Taylor" wherein "Antonio advised that he intended to supply Roberts and Taylor

---

cannot seize and measure all the drugs that flow through a large drug distribution conspiracy.'" (quoting *Collado*, 975 F.2d at 998)).

between 400 and 500 bricks of heroin," and later that day, "Antonio informed Taylor that he (Antonio) had given Roberts 'a sample.'" (PSR ¶ 166.) Then, on August 10, "Antonio informed Taylor that he had only been able to prepare 'two'—meaning 200 bricks of heroin—and that he would be able to provide another 'two' the next day. Taylor asked what stamps Antonio was going to use, and Antonio stated, 'Obsession' and 'Scarface.' (Those stamps matched the stamps of 50 bricks of heroin that law enforcement recovered from an individual later that day after observing the individual engage in a purchase of heroin from Jerome Roberts.)" (PSR ¶ 167.) On August 10, law enforcement surveillance also "observed Taylor meet with Roberts to obtain 100 bricks of the heroin that Antonio had provided to Roberts." (PSR ¶ 167.) On August 13, law enforcement "observed Jerome Roberts provide another co-conspirator . . . with a Gap bag containing approximately 100 bricks of heroin, which Antonio had supplied to Roberts." (PSR ¶ 169.) On August 18, "Roberts informed Taylor that Antonio had 130 bricks of heroin ready to be supplied" and then observed "Roberts and Taylor meet near Taylor's residence so . . . Taylor could give Roberts money for Antonio. Law enforcement then observed Roberts and Antonio meet at and around 820 Chambers Street." (PSR ¶ 176.) And between September 20 to 22, "communications between Taylor and Roberts reflected that Roberts had arranged for the sale of 300 bricks of heroin to another individual, which Taylor could obtain from Antonio." (PSR ¶ 178.) This is not to mention the approximately 1.4 kilograms of heroin seized on October 25, 2018, from 820 Chambers Street where one of Defendant's associates, Antonio, was arrested. (PSR ¶ 179.)

Finally, the jury unanimously found that "the government proved beyond a reasonable doubt that the quantity of heroin involved in the conspiracy that was reasonably foreseeable to [D]efendant . . . was one kilogram or more." (ECF No. 684 at 3.) The Court has not been presented with a persuasive basis to depart from the jury's finding for purposes of sentencing. *See, e.g.,*

*United States v. Campos*, 362 F.3d 1013, 1015-16 (8th Cir. 2004) ("Once the jury found beyond a reasonable doubt that the amount of methamphetamine Campos had intended to distribute was 50 or more grams, it was a legal impossibility for the district court to find by a preponderance of the evidence that the amount of methamphetamine Campos intended to distribute was less than 50 grams."); *see also Williams*, 974 F.3d at 378-79 ("[T]he District Court could also, by a preponderance of the evidence, have incorporated those [jury] findings consistent with the relevant-conduct standard.").

Accordingly, the Court concludes that paragraph 293 of the final PSR is accurate. For purposes of sentencing, the Government has proven that Defendant's non-career-offender base offense level is 30 under U.S.S.G. 2D1.1(c)(5) due to Defendant's participation in a drug trafficking conspiracy involving at least one kilogram but less than three kilograms of heroin. The Court will address Defendant's request for a variance at sentencing.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, Defendant Jerome Roberts' objection to paragraph 293 of the final PSR is **OVERRULED**. An appropriate Order follows.

Dated: April 24, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE